# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| COBB THEATRES III, LLC; COBB THEATRES IV, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. 1:14-CV-00182-SCJ |
| AMC ENTERTAINMENT HOLDINGS, INC.; AMC ENTERTAINMENT INC.; AMERICAN MULTI-CINEMA, INC., | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Mary C. Gill
Adam J. Biegel
Jonathan D. Parente
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA  30309-3424
Telephone:     (404) 881-7000
Facsimile:     (404) 881-7777

Michael A. Swartzendruber
Jason K. Fagelman
Rachel L. Williams
Nicholas Taunton
(*Admitted pro hac vice*)
FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue, Suite 2800
Dallas, TX  75201-2784
Telephone:     (214) 855-8000
Facsimile:     (214) 855-8200

Darryl Anderson
*(Pro hac vice application to follow)*
FULBRIGHT & JAWORSKI LLP
1301 McKinney Street, Suite 5100
Houston, TX  77010
Telephone:     (713) 651-5562
Facsimile:     (713) 651-5246

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

SUMMARY OF ARGUMENT ............................................................. 1

BACKGROUND .................................................................................... 2

ARGUMENT AND AUTHORITIES ..................................................... 3

I.      To Survive a Motion to Dismiss, Cobb Must Plead Facts—Not Conclusions—Sufficient to Establish Each Element of its Claims ............................................................................................ 3

II.     Cobb's Section 1 Claims Should Be Dismissed [Counts I and IV] ....................................................................................................... 7

     A.     Cobb Fails to Allege a Conspiracy ..................................... 7

         1.     Cobb Fails to Allege Any Specific Clearance "Agreements" ................................................................ 7

         2.     Cobb's Conclusory "Circuit Dealing" Allegation Cannot Save its Conspiracy Claims ............................... 8

     B.     Cobb Fails to Allege an Unreasonable Restraint of Trade ...... 10

         1.     The Clearance(s) Are Procompetitive as a Matter of Law ................................................................... 10

         2.     Cobb Fails to Allege Injury to Competition ................. 12

             a.     The Complaint makes no allegation of actual harm to competition ........................................... 12

             b.     The failure to define a relevant market precludes Cobb from alleging potential harm to competition ....................................................... 13

III.    Cobb's Section 2 Claims Should Be Dismissed [Counts I, II, and III] ........................................................................................... 16

     A.     The Complaint Contains No Viable Allegation of Exclusionary or Predatory Conduct by AMC .......................... 17

**TABLE OF CONTENTS**
(continued)

**Page**

B.    The Complaint Contains No Adequate Allegation of Monopoly Power, Either in Atlanta or Elsewhere...................18

1.    Cobb Has Not Pleaded a Cognizable Relevant Market................................................................................19

2.    The Only Basis for Cobb's Limitation of the Geographic Market to the "Buckhead-Brookhaven Zone" Precludes its Allegation of Monopoly Power ...................................................................................20

IV.    Cobb Fails to Allege Antitrust Injury................................................21

V.    Cobb's State Law Claims Should Also Be Dismissed......................23

CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Apani Sw., Inc. v. Coca-Cola Enterps.*,
  300 F.3d 620 (5th Cir. 2002) ...................................................................14, 15

*Appleton v. Intergraph Corp.*,
  627 F. Supp. 2d 1342 (M.D. Ga. 2008) .......................................................12, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................4, 9, 18, 22

*Atl. Richfield Co. v. USA Pet. Co.*,
  495 U.S. 328 (1990).............................................................................7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................*passim*

*Bigelow v. RKO Radio Pictures*,
  78 F. Supp. 250 (N.D. Ill. 1948) ..............................................................20

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)..........................................................................12

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)......................................................................12, 21

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
  433 U.S. 36 (1977)...........................................................................10

*Ferrero v. Associated Materials Inc.*,
  923 F.2d 1441 (11th Cir. 1991) ................................................................25

*Gulf States Reorganization Group, Inc. v. Nucor Corp.*,
  721 F.3d 1281 (11th Cir. 2013) ................................................................19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*HLD Enterps. v. Michelin N. Am., Inc.*,
No. Civ. A. 1:03 CV 2558T, 2004 WL 2095739 (N.D. Ga. Aug.
25, 2003) ...................................................................................................23, 24

*In re LTL Shipping Servs. Antitrust Litig.*,
No. 1:08-md-01895-WSD, 2009 WL 323219 (N.D. Ga. Jan. 28,
2009) ....................................................................................................................4

*Indeck Energy Servs. v. Consumers Energy Co.*,
250 F.3d 972 (6th Cir. 2000) .................................................................22, 23

*Jacobs v. Tempur-Pedic Int'l*,
626 F.3d 1327 (11th Cir. 2010) ..................................................8, 13, 14, 19

*L.A. Draper & Son v. Wheelabrator-Frye, Inc.*,
735 F.2d 414 (11th Cir. 1984) ........................................................................15

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
551 U.S. 877 (2007)...........................................................................................5

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
72 F.3d 1538 (11th Cir. 1996) .............................................................5, 10, 12

*Lombard's, Inc. v. Prince Mfg., Inc.*,
753 F.2d 974 (11th Cir. 1985) ..........................................................................8

*Mohamad v. Palestinian Auth.*,
132 S. Ct. 1702 (2012)........................................................................................4

*Morris Commc'ns Corp. v. PGA Tour, Inc.*,
364 F.3d 1288 (11th Cir. 2004) ........................................................................6

*Neotonus, Inc. v. Am. Med. Ass'n*,
554 F. Supp. 2d 1368 (N.D. Ga. 2007).............................................................24

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) .............................................................................22

*Norris v. Hearst Trust*,
   500 F.3d 454 (5th Cir. 2007) .............................................................................21

*Orson, Inc. v. Miramax Film Corp.*,
   79 F.3d 1358 (3d Cir. 1996) .............................................................................11

*OSGI, Inc. v. IBM Global Forensics*,
   No. 11-80880-CIV, 2012 WL 1150402 (S.D. Fla. Mar. 14, 2012)....................22

*Pac. Bell Tele. Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009)............................................................................................6

*Queen City Pizza v. Domino's Pizza*,
   124 F.3d 430 (3d Cir. 1997) .....................................................................14, 15

*Reading Int'l, Inc. v. Oaktree Capital Mgmt.*,
   No. 03 Civ. 1895, 2007 WL 39301 (S.D.N.Y. Jan. 8, 2007) .................10, 11, 13

*Sinaltrainal v. Coca-Cola Co.*,
   578 F.3d 1252 (11th Cir. 2009) ..........................................................................4

*Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*,
   No. 97 Civ. 5499, 2004 WL 691680 (S.D.N.Y. Mar. 31, 2004).......................13

*Soffer v. Nat'l Amusements, Inc.*,
   No. 3:91CV472, 1996 WL 194947 (D. Conn. Jan. 10, 1996)...........................11

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
   376 F.3d 1065 (11th Cir. 2004) ............................................................5, 12, 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tampa Elec. Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961)................................................................16

*Three Movies of Tarzana v. Pac. Theatres, Inc.*,
   828 F.2d 1395 (9th Cir. 1987) .......................................5, 11

*Todorov v. DCH Healthcare Auth.*,
   921 F.2d 1438 (11th Cir. 1991) ....................................7, 21

*U.S. Anchor Mfg. v. Rule Indus.*,
   7 F.3d 986 (11th Cir. 1993) .......................................19, 25

*U.S. Ring Binder L.P. v. World Wide Stationery Mfg. Co.*,
   804 F. Supp. 2d 588 (N.D. Ohio 2011) ......................20, 21

*United States v. Griffith*,
   334 U.S. 100 (1948)................................................9, 18

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966)..........................................................6

*United States v. Paramount Pictures, Inc.*,
   334 U.S. 131 (1948)................................................10, 11

*United States v. Proch*,
   637 F.3d 1262 (11th Cir. 2011) ...................................3

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)..........................................................6

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
   257 F.3d 256 (2d Cir. 2001) ...........................................6

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**State Cases**

*Griffin v. Vandergriff,*
205 Ga. 288 (1949) ...............................................................................24

*St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp.,*
205 Ga. App. 121 (1992) .......................................................................24

*Wedgewood Carpet Mills, Inc. v. Color-Set, Inc.,*
149 Ga. App. 417 (1979) .......................................................................25

**Rules and Statutes**

15 U.S.C. § 1 .................................................................................*passim*

15 U.S.C. § 2 .................................................................................*passim*

15 U.S.C. § 15 ..........................................................................................6

Fed. R. Civ. P. 8 ......................................................................................4

Fed. R. Civ. P. 12 ..................................................................................23

Fed. R. Evid. 201 ....................................................................................3

O.C.G.A. § 13-8-2 .................................................................................23

**Other Authorities**

Georgia Const. Art. III, § VI, ¶ 5 .........................................................23

Defendants (collectively, "AMC") file this memorandum of law in support of their motion to dismiss [Dkt. No. 19].

SUMMARY OF ARGUMENT

Unable to best AMC in the marketplace, plaintiffs Cobb Theatres III, LLC and Cobb Theatres IV, LLC ("Cobb") have turned to the courthouse, asserting that Cobb's business shortcomings are due to conclusorily alleged antitrust violations by AMC.   Cobb's core complaint appears to be that AMC has requested "clearances" from film distributors (companies such as Disney, Sony, Warner Bros., Paramount, and the like), pursuant to which, when a distributor licensed one or both of AMC's theaters in the Buckhead area of Atlanta to exhibit films, it would not license Cobb's nearby theater in Brookhaven to exhibit the same film on the same initial date.   According to Cobb, this long-recognized industry practice constitutes an illegal antitrust conspiracy under federal law between AMC and the film distributors, an act of monopolization, and a violation of Georgia state law.

Cobb's antitrust claims should be dismissed for multiple reasons.   With respect to Cobb's antitrust conspiracy theory, the Complaint fails to sufficiently allege (1) any actual agreement between AMC and any other person or (2) that any agreement "unreasonably" restrained trade, in large part because the Complaint fails to plead a relevant market.   With respect to Cobb's monopolization claim, the

Complaint (1) fails to allege any exclusionary or predatory acts by AMC, and (2) cannot allege monopoly power, because it fails to define any relevant markets.  In addition, Cobb has not alleged antitrust injury, a prerequisite for a private plaintiff to have standing to bring antitrust claims.  Lastly, Cobb's state law claims, predicated on the flawed antitrust allegations, fall along with the antitrust claims.

## BACKGROUND[1]

Cobb owns and operates a movie theater in the Atlanta suburb of Brookhaven, known as the CineBistro at Town Brookhaven, which has 7 screens and seats 758 patrons.  Compl. ¶¶ 6, 37.  AMC owns and operates two theaters in the adjacent Atlanta neighborhood of Buckhead:  the AMC Phipps Plaza 14 (14 screens and 1,046 seats) and the AMC Fork & Screen Buckhead (6 screens and 650 seats).  *Id.* ¶¶ 35-36.  The Complaint recognizes that all three of these theaters, located within a three-mile radius, compete with each other for audience.  *See id.* ¶¶ 35-37, 49.  Importantly, Cobb makes no plausible, factually supported allegation that AMC's theaters are the only competitors of its Brookhaven theater for patrons, nor could it.  The Regal Hollywood Stadium 24, Regal Perimeter Point Stadium 10, Regal Atlantic Station Stadium 16, and United Artists Tara Cinemas 4 are all

---

[1] For purposes of this motion, AMC treats the factual allegations pleaded in the Complaint as true, but AMC reserves its right to contest those "facts," should this case proceed.

approximately 15 minutes away, according to the "Directions" feature on Google Maps.[2]  *See* Ex. A, Map of Atlanta Theaters, https://www.google.com/maps (search "movie theater Atlanta, GA").

According to Cobb, certain film distributors license each of their films to either the AMC Phipps/Fork & Screen theaters, or to the Cobb Brookhaven theater, pursuant to "clearances."  Compl. ¶ 60.  The term "clearance" refers to a practice in the film licensing industry whereby a distributor elects to license each of its films to only one theater or another in close geographic proximity to each other, rather than licensing the film to both theaters simultaneously (the latter typically referred to as "day and date" because the film is licensed to play on the same day and date even at neighboring theaters).  *See id.* ¶ 29.

Cobb filed the Complaint on January 22, 2014, alleging that AMC's requests for clearance(s) violated federal antitrust laws and Georgia state law.

ARGUMENT AND AUTHORITIES

**I.    To Survive a Motion to Dismiss, Cobb Must Plead Facts—Not Conclusions—Sufficient to Establish Each Element of its Claims**

The requirements for pleading a cognizable claim in federal court, as set forth in the Supreme Court's seminal decisions of *Bell Atlantic Corp. v. Twombly*,

---

[2] The Court may take judicial notice of the locations of nearby theaters in deciding this motion to dismiss.  *See* Fed. R. Evid. 201(b); *United States v. Proch*, 637 F.3d 1262, 1266 (11th Cir. 2011).

550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), are well known,

particularly in antitrust cases.  As the Eleventh Circuit has summarized:

> Although it must accept well-pled facts as true, the court is not
> required to accept a plaintiff's legal conclusions.  In evaluating the
> sufficiency of a plaintiff's pleadings, we make reasonable inferences
> in Plaintiff's favor, "but we are not required to draw plaintiff's
> inference."  Similarly, "unwarranted deductions of fact" in a
> complaint are not admitted as true. . . .
>
> A complaint may be dismissed if the facts as pled do not state a claim
> for relief that is plausible on its face. . . .  [A] complaint "requires
> more than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do." . . .
>
> More recently, in *Iqbal*, the Supreme Court reiterated that although
> Rule 8 of the Federal Rules of Civil Procedure does not require
> detailed factual allegations, it does demand "more than an unadorned,
> the-defendant-unlawfully-harmed-me accusation."

*Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260-61 (11th Cir. 2009) (citations

omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct.

1702 (2012); *see also In re LTL Shipping Servs. Antitrust Litig.*, No. 1:08-md-

01895-WSD, 2009 WL 323219, at *7-9 (N.D. Ga. Jan. 28, 2009).  Under this

standard, a court should avoid costly antitrust discovery when the complaint lacks

"enough heft" to show the plaintiff is entitled to relief under the antitrust laws.

*Twombly*, 550 U.S. at 557-58; *In re LTL*, 2009 WL 323219, at *9.

Section 1 of the Sherman Act prohibits "[e]very contract, combination . . .,

or conspiracy, in restraint of trade. . . ."  15 U.S.C. § 1.  Despite the seeming

breadth of this language, the Supreme Court "has repeated time and again that § 1 outlaws only **unreasonable** restraints." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (emphasis added).  Thus, Section 1 requires:  (1) the existence of an agreement between two or more independent entities, and (2) a showing that the agreement had the effect of unreasonably restraining trade.  *See, e.g.*, *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004).  Because the conspiracy alleged by Cobb is "between businesses operating at different levels of the same product's production chain or distribution chain, known as 'vertical' agreements," the reasonableness of the restraint is governed by what is known as the "rule of reason."  *Id.*; *see also Three Movies of Tarzana v. Pac. Theatres, Inc.*, 828 F.2d 1395, 1398 (9th Cir. 1987) (applying rule of reason to analyze clearances).  An agreement runs afoul of the rule of reason only if the challenged conduct has an "anticompetitive effect . . . on the relevant market" and "has no pro-competitive benefit or justification."  *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996).

A person who "monopolize[s] or attempt[s] to monopolize" also violates the Sherman Act.  15 U.S.C. § 2.  A monopolization claim has two elements:  "the possession of monopoly power in the relevant market [and] 'the willful acquisition or maintenance of that power as distinguished from growth or development as a

consequence of a superior product, business acumen, or historic accident.'" *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)); *see also Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1293-94 (11th Cir. 2004). "Simply possessing monopoly power and charging monopoly prices does not violate § 2." *Pac. Bell Tele. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). The essential second component of "willful acquisition or maintenance" of monopoly power requires a plaintiff to plead "predatory or exclusionary acts or practices that have the effect of preventing or excluding *competition* within the relevant market." *Morris Commc'ns*, 364 F.3d at 1294 (emphasis added). As the Eleventh Circuit has explained, "[h]arm to one or more *competitors* will not suffice for a § 2 violation."[3] *Id.* (internal quotation marks and citation omitted).

In addition to the substantive liability elements of an antitrust claim, a private plaintiff is authorized to bring a claim alleging antitrust violations only if the plaintiff can establish it was "injured . . . by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a). Pleading this "antitrust injury" requires Cobb

---

[3] Moreover, when a monopolization claim is based on using or leveraging monopoly power from one purported market to gain advantage in another, as with Cobb's "circuit dealing" and monopolization claims, the plaintiff must further allege (and ultimately prove) monopoly or market power in a properly defined market that is being used for leverage. *See, e.g.*, *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 272 (2d Cir. 2001).

to plausibly allege that it has suffered "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Atl. Richfield Co. v. USA Pet. Co.*, 495 U.S. 328, 334 (1990); *see also Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1449 (11th Cir. 1991) (heightened antitrust injury requirement "ensures that suits inapposite to the goals of the antitrust laws are not litigated").

## II.   Cobb's Section 1 Claims Should Be Dismissed [Counts I and IV]

Cobb's bare allegation that the decisions by unnamed film distributors to recognize "clearances" between AMC's Phipps/Fork & Screen theaters and Cobb's Brookhaven theater in licensing certain films constitute an antitrust conspiracy falls well short of its pleading requirements.

### A.   Cobb Fails to Allege a Conspiracy

#### 1.   Cobb Fails to Allege Any Specific Clearance "Agreements"

The threshold defect in Cobb's Section 1 claims is that Cobb has not alleged that AMC conspired with anyone regarding the alleged clearances.  Cobb asserts generically that AMC has "coerce[d] distributors into entering into agreements" with it, Compl. ¶ 124, but ***none of these supposedly conspiring distributors are named***.  *See also* Compl. ¶¶ 58, 60 (referencing "major film distributors").  The Eleventh Circuit has held that cases should be dismissed when "the specific

participants of the conspiracy are not even identified."[4]  *Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985); *see also Jacobs v. Tempur-Pedic Int'l*, 626 F.3d 1327, 1332 (11th Cir. 2010) (antitrust complaint must contain "'allegations plausibly suggesting (not merely consistent with) [a conspiracy or] agreement'") (quoting *Twombly*, 550 U.S. at 557).

Cobb's conspiracy allegations fail to establish an actual agreement or conspiracy.

### 2.  Cobb's Conclusory "Circuit Dealing" Allegation Cannot Save its Conspiracy Claims

To rescue its conclusory conspiracy allegation, Cobb asserts that AMC could have had the power to coerce an economically injurious agreement with film distributors by engaging in "circuit dealing."  The Supreme Court has explained that "circuit dealing" can arise when a chain of theaters enjoys monopoly status in certain markets; "[w]hen the buying power of the entire circuit is used to negotiate films for . . . competitive as well as . . . closed towns, [the circuit] is using

---

[4] The only distributors referenced anywhere in the Complaint are Sony and Warner Bros.  Compl. ¶ 61.  But Cobb concedes that Sony exclusively licensed to Cobb two of its most successful films of the last year: the award-winning *Captain Phillips* and *Elysium*.  *Id.*  And Cobb's allegation as to Warner Bros. is only that Warner Bros. insisted that Cobb show its sequel to *The Hobbit* on four screens.  These allegations fall woefully short of plausibly suggesting a conspiracy with AMC.

monopoly power to expand [its] empire." *United States v. Griffith*, 334 U.S. 100, 108 (1948); *see also* Compl. ¶ 33 (defining "circuit deals").

Cobb's circuit dealing claim hypothesizes that AMC could, in theory, refuse to exhibit a film at some other theater(s) in some other market(s) where AMC has monopoly power if the distributors refused to grant clearances in favor of its Buckhead theaters.  But there are no facts alleged supporting or even suggesting that AMC made any such threat.  The lone letter that Cobb cites from AMC to unspecified "major film distributors" says nothing about any other AMC theaters or markets; it merely states AMC's position that its Buckhead theaters "will not play day-and-date with" Cobb's nearby Brookhaven theater.  *Id.* ¶ 58.

There is, in short, not a single fact alleged in the Complaint that ***any*** circuit deal, with ***any*** distributor, for ***any*** film, was ever accepted, implemented, or even proposed.[5]  Cobb repeatedly invokes the conclusory label "circuit dealing," but that is insufficient when devoid of any supportive factual allegations.  *See Iqbal*, 556 U.S. at 678 (a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 557).  Thus,

---

[5] Notably, the Complaint acknowledges that Cobb received licenses for *Captain Phillips*, *Elysium*, and the sequel to *The Hobbit*.  Compl. ¶ 61.  Contrary to the circuit dealing theory, the Complaint conspicuously does not allege (nor could it) that AMC refused to exhibit those films at any other theater(s) in the AMC circuit.

Cobb has completely failed to allege any facts plausibly showing any circuit deal agreement.

**B.      Cobb Fails to Allege an Unreasonable Restraint of Trade**

Cobb's Section 1 claim also should be dismissed because the Complaint lacks factual allegations that any purported clearances granted by distributors were "unreasonable."  Cobb fails to allege facts that would show "(1) an anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the conduct has no procompetitive benefit or justification."  *Levine*, 72 F.3d at 1551.

**1.      The Clearance(s) Are Procompetitive as a Matter of Law**

Courts have consistently recognized that clearances are often procompetitive and perfectly legal.  "Clearance agreements are commonly used in the film exhibition industry, as they ensure that a particular theatre's income from a film will not be greatly diminished because the film is also being shown at a nearby competing theatre." *Reading Int'l, Inc. v. Oaktree Capital Mgmt.*, No. 03 Civ. 1895, 2007 WL 39301, at *15 (S.D.N.Y. Jan. 8, 2007) (citing *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 145 (1948)). [6]   "Recognizing the

---

[6] In analogous contexts, courts regularly acknowledge the procompetitive benefits arising out of a manufacturer's decision to restrict the distribution of its products to distributors in designated territories.  *See, e.g.*, *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 54 (1977) (noting the "redeeming virtues" of vertical restrictions that limit intrabrand competition).

procompetitive benefits of clearance agreements, the Supreme Court has long held that such agreements are reasonable as long as they are 'not unduly extended as to area or duration.'" *Reading Int'l*, 2007 WL 39301, at *15 (quoting *Paramount*, 334 U.S. at 145).

Thus, absent particular showings noticeably absent from Cobb's allegations, clearances are **legal**. "Courts have found clearances in particular to be reasonable restraints of trade . . . when the theatres are in substantial competition, and the clearances are used to assure the exhibitor that the distributor will not license a competitor to the movie at the same time. . . ." *Movies of Tarzana*, 828 F.2d at 1399 (citing *Paramount*, 334 U. S. at 145-46).[7]

One searches the Complaint in vain for any allegation that Cobb's Brookhaven theater is not in substantial competition with AMC's Buckhead theaters. To the contrary, Cobb alleges that AMC's theaters and the Brookhaven theater "compet[e] to exhibit films to the public in the Buckhead-Brookhaven zone," *id*. ¶ 49, and that "[m]oviegoers . . . are reluctant to travel significant distances outside of this zone." *Id*. ¶ 39. In fact, there are **no** allegations at all about the scope, duration, or other terms of any film license agreement that would

---

[7] *See also Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1371 (3d Cir. 1996); *Reading Int'l*, 2007 WL 39301, at *16; *Soffer v. Nat'l Amusements, Inc.*, No. 3:91CV472, 1996 WL 194947, at *5 (D. Conn. Jan. 10, 1996).

support the contention that any clearances were unreasonable.  These fundamental

defects are fatal to Cobb's conspiracy claim.

### 2. Cobb Fails to Allege Injury to Competition

To allege anticompetitive effects, Cobb must allege "either that the conduct

had an actual detrimental effect on competition or that it had the potential for

genuine adverse effects on competition."  *Appleton v. Intergraph Corp.*, 627 F.

Supp. 2d 1342, 1354 (M.D. Ga. 2008) (citing *Levine*, 72 F.3d at 1551).   Either

way, however, "the harm must be to competition in general, and not just one or a

few competitors."  *Id.* (citing *Spanish Broad.*, 376 F.3d at 1071).   The antitrust

laws "were enacted for 'the protection of competition not competitors . . . .'"

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting

*Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).

### a. The Complaint makes no allegation of actual harm to competition

There is no valid allegation in the Complaint of actual harm to competition.

Cobb does not claim that moviegoers are deprived by the clearances of the ability

to see a single film(s).  Nor does Cobb assert that moviegoers are charged higher

prices for films in any relevant markets, or even in the alleged

Buckhead/Brookhaven zone.  Rather, Cobb asserts only that "AMC's demands for

preferential treatment/clearance/exclusivity have the effect of limiting Buckhead-

Brookhaven moviegoer's theater choices."  Compl. ¶ 66.  Courts have routinely held, however, that this precise allegation regarding clearances ***does not*** constitute harm to competition as a matter of law: "[T]he mere possibility that a consumer might have to see his or her first choice movie at his or her second choice theatre or his or her second choice movie at his or her first choice theatre . . . is not an actionable restraint on trade . . . [and] does not mean that there has been an actionable harm to consumer choice or competition." *Reading Int'l*, 2007 WL 39301, at *14 (quoting *Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, No. 97 Civ. 5499, 2004 WL 691680, at *10 (S.D.N.Y. Mar. 31, 2004)).

> b.    The failure to define a relevant market precludes Cobb
>        from alleging potential harm to competition

Lacking a sufficient allegation of ***actual*** harm to competition, Cobb can state a claim only if it alleges that the clearances could ***potentially*** harm competition. But courts in the Eleventh Circuit have made clear that "a plaintiff relying on the potential to adversely effect competition must identify the relevant market and show that the defendants possessed power in that market." *Appleton*, 627 F. Supp. 2d at 1355 (citing *Spanish Broad.*, 376 F.3d at 1073).  Once again, Cobb's allegations fall well short of what is required to plead a viable claim.

In the Eleventh Circuit, a plaintiff "must present enough information in [its] complaint to plausibly suggest the contours of the relevant geographic and product

markets." *Jacobs*, 626 F.3d at 1336.   A complaint that "provides no factual allegations of the cross-elasticity of demand or other indications of price sensitivity" to support the proposed relevant market is insufficient as a matter of law, and should be dismissed.  *Id.* at 1338; *see also Apani Sw., Inc. v. Coca-Cola Enterps.*, 300 F.3d 620, 628 (5th Cir. 2002) ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted."); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997) (same; affirming 12(b)(6) dismissal).  Cobb's Complaint fails to meet these requirements.

Cobb defines the geographic market as the "Buckhead-Brookhaven film licensing and exhibition zone," which consists of "moviegoers who reside in or around Buckhead and Brookhaven."  Compl. ¶ 39.  Cobb goes on to assert that "AMC's Buckhead theaters and Cobb's Brookhaven CineBistro are the only film theaters in this zone."  *Id.* ¶ 40.  But this self-serving definition does not comport with publicly available, indisputable market realities.  After all, Regal operates the Regal Hollywood 24 on I-85, a 24-screen multiplex approximately 10 minutes

away from Cobb's Brookhaven theater, as well as the Regal Perimeter Pointe Stadium 10, a 10-screen theater less than 15 minutes away. *See* Ex. A.  There are numerous other theaters nearby, and Cobb provides no factual allegations that would support the contention that the geographic market should be crafted so narrowly as to include only Cobb's and AMC's theaters.  *See L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 423 (11th Cir. 1984) ("The location and facilities of other producers and distributors are also ***essential*** in determining the relevant geographic market.") (emphasis added).

Similarly, the product markets identified by Cobb are defined narrowly as "the market for licensing films," *id.* ¶ 41, and "the market for exhibition of films to patrons."  *Id.* ¶ 49.  There are no allegations of cross-elasticity of demand in the Complaint that would support this product market.  *See Apani*, 300 F.3d at 628; *Queen City Pizza*, 124 F.3d at 435.  Instead, Cobb asks the Court simply to assume (based solely on conclusory statements, not facts) that consumers do not perceive watching the same movie on DVD or pay-per-view in their home to be "a reasonable substitute for viewing films in a theater."[8]  *Id.* ¶ 18.  This failure is fatal to Cobb's allegation that the relevant product markets must be limited to film.

---

[8] Cobb admits that the release of a film on DVD or pay-per-view renders the "theatrical exhibition value" of the film "virtually exhausted."  Compl. ¶¶ 23-25.

The failure to adequately plead a relevant geographic or product market dooms Cobb's effort to plead harm to competition, and thus precludes Cobb from properly pleading that any clearances were "unreasonable" under Section 1.[9]

### III.   Cobb's Section 2 Claims Should Be Dismissed [Counts I, II, and III]

Unable to plead a conspiracy claim under Section 1, Cobb repackages the same allegations in Section 2 terminology.  As a result, many of the defects that doom Cobb's Section 1 claims also require dismissal of the Section 2 claims. First, the supposed predatory or exclusionary acts that Cobb recites (including clearances and circuit dealing) all constitute acts that courts have repeatedly recognized do not constitute anticompetitive conduct, as a matter of law.  *See supra* §§ II.A.2, II.B.  In fact, the failure to plead injury to competition is fatal to Cobb's ability to satisfy this element of a Section 2 claim.  Second, the failure to plead a relevant market as described above forecloses any allegation that AMC has monopoly power.

---

That could not be the case unless consumers do, in fact, view DVD and pay-per-view as reasonable substitutes for film.

[9] In Count V, Cobb characterizes its claim as challenging an exclusive dealing agreement.  Exclusive dealing arrangements are unlawful only when there is an "agreement" that is "unreasonable," elements that are both missing here. Moreover, the Supreme Court has held that such arrangements are generally lawful, unless they result in substantial foreclosure in the relevant market.  *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).  The Complaint contains no allegations of substantial foreclosure in any properly pleaded market.

**A.    The Complaint Contains No Viable Allegation of Exclusionary or Predatory Conduct by AMC**

Cobb's allegations of predatory or exclusionary conduct all arise out of the same conduct that Cobb alleged constituted an unlawful conspiracy under Section 1—the alleged request by AMC for clearances between its Buckhead theaters and Cobb's Brookhaven theater and the allegation of circuit dealing.

First, AMC's alleged actions in requesting clearances cannot, as a matter of law, constitute exclusionary or predatory acts of monopolization when the clearances, even if granted, would be lawful.  Thus, for all the reasons described above, the inadequate allegations of unlawful clearances precludes Cobb from pleading a monopolization claim based on those same clearance allegations.[10]

Second, as discussed above, Cobb's circuit dealing claim—an allegation of monopoly leveraging—fails because Cobb has not alleged any threats or agreements that amount to a "circuit deal" and because Cobb has not alleged that AMC possesses the requisite monopoly power in a leveraging market in the first place.  A circuit dealing claim turns on an exhibitor possessing market power in

---

[10] For these same reasons, the allegations that AMC informed landlords that AMC would request clearance if Cobb were to open a theater on the prospective property is not a basis for a monopolization claim.  *See* Compl. ¶¶ 87-91.  Given that clearances in such circumstances are not unlawful, there can be no plausible allegation that it is a predatory act of monopolization merely to inform a third party that a lawful clearance request would be made.

one market (the "leveraging market"), which is used as leverage to extract benefits in a different market. *Griffith*, 334 U.S. at 107. Yet Cobb does not allege **or even identify** a single market outside of the Buckhead/Brookhaven zone in which AMC allegedly has market power that it supposedly used as a threat or leverage to force film distributors to agree to clearances in the alleged Buckhead/Brookhaven zone. Nor is there a single allegation in the Complaint asserting that AMC made a proposal, orally or in writing, to condition licensing of films in any other markets on the distributors' licensing decisions in the Buckhead/Brookhaven zone. Nor is there any allegation that any distributor granted clearances based on circuit dealing. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. Cobb's allegation of "circuit dealing" is plainly insufficient.

### B. The Complaint Contains No Adequate Allegation of Monopoly Power, Either in Atlanta or Elsewhere

Cobb's monopolization claims should also be dismissed for the independent reason that Cobb has not pleaded that AMC has monopoly power in any properly defined relevant market. Indeed, the only market that Cobb even purports to define is one in which Cobb concedes there is substantial competition for exhibiting films to the movie-going public—an allegation incompatible with the exercise of monopoly power. *See* Compl. ¶¶ 39, 49.

### 1.    Cobb Has Not Pleaded a Cognizable Relevant Market

Antitrust law makes clear that whether an entity has monopoly power in a particular market can only be evaluated if one first properly defines what the relevant market is.  *U.S. Anchor Mfg. v. Rule Indus.*, 7 F.3d 986, 994 (11th Cir. 1993) ("Defining the market is a necessary step in any analysis of market power and thus an indispensable element" of a Section 2 claim.).  For all the reasons described above, *see supra* § II.B.2.b, Cobb's allegations regarding the "Buckhead-Brookhaven zone" fail to define a proper geographic market, and the conclusory assertion that the relevant product market consists of the market for licensing film and the market for exhibiting films falls short of Eleventh Circuit pleading requirements.[11]

The scattered references throughout Cobb's Complaint to *other* markets, outside the Buckhead-Brookhaven zone, are even more deficient.  Cobb alleges that AMC has "monopoly power in a substantial number of film licensing and exhibition zones," *see* Compl. ¶¶ 57, 73, 85, 88, but does not specify what markets it is referring to.  An allegation of monopoly power requires an adequately pleaded relevant market.  *Jacobs*, 626 F.3d at 1336.  But Cobb neither pleads nor even

---

[11] The failure to define a relevant market is equally fatal to Cobb's attempted monopolization claim, as it is to the actual monopolization claim.  *See, e.g.*, *Gulf States Reorganization Group, Inc. v. Nucor Corp.*, 721 F.3d 1281, 1285 (11th Cir. 2013).

identifies (by state, region, or other boundary) a relevant geographic market for any of these zones.

> ### 2. The Only Basis for Cobb's Limitation of the Geographic Market to the "Buckhead-Brookhaven Zone" Precludes its Allegation of Monopoly Power

Finally, even if one credited the "Buckhead-Brookhaven Zone" as a relevant geographic market,[12] it would not suffice to plead a market in which AMC has monopoly power, as required by Section 2.   After all, Cobb recognizes that AMC's Buckhead theaters and Cobb's Brookhaven theater compete "to exhibit films to the public in the Buckhead-Brookhaven zone."  Compl. ¶ 49.  It is not enough for Cobb to simply assert AMC has a high market share, by reference to its percentage of theater seats in the zone.  "[A] high degree of market share alone is not enough to establish the existence of monopoly power."  *U.S. Ring Binder L.P. v. World Wide Stationery Mfg. Co.*, 804 F. Supp. 2d 588, 595 (N.D. Ohio 2011). This is because monopoly power is not simply a function of market share; rather, "[t]he key question . . . is whether the defendant has the ability to control prices in,

---

[12] Industry-identified film zones do not purport to identify the geographic scope of an antitrust market; they are merely negotiated zones defined for film licensing purposes.   In fact, each distributor may define a zone differently, further demonstrating that a reference to a film licensing zone is not a valid basis for defining a geographic market.  *See, e.g., Bigelow v. RKO Radio Pictures*, 78 F. Supp. 250, 257 (N.D. Ill. 1948) ("The zones established by Twentieth Century-Fox differed from those of RKO, those of RKO differed from Loew's, Incorporated, and Paramount's differed from the others.").

or exclude competitors from, the relevant market.  At the early pleading stage, the inquiry becomes whether the dynamics of the alleged market plausibly could support the existence and exercise of monopoly power." *Id.* at 596.  Where the complaint rests on a geographic market purportedly defined based on the existing and recognized competition within its boundaries, the plaintiff cannot subsequently disavow that very competition and allege monopoly power.  As one court has cogently explained, "[c]oupled with the Complaint's description of a sharply competitive marketplace, the allegation that monopoly power does or could exist in the commodity ring market is not plausible." *Id.*

## IV.   Cobb Fails to Allege Antitrust Injury

Cobb's antitrust claims also fail because Cobb has not alleged the type of injury the antitrust laws require to establish standing.  Injury to a single competitor like Cobb, even if it could be proven, is insufficient to confer antitrust standing. "A plaintiff 'must prove more than injury causally linked to' an antitrust violation, namely: 'Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007) (quoting *Brunswick*, 429 U.S. at 489); *see also Todorov*, 921 F.2d at 1449. Standing based upon antitrust injury "is a threshold, pleading-stage inquiry and

when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law. . . ." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (applying *Twombly* to dismiss, for failure to state antitrust injury, a Section 2 claim based upon exclusive vertical distribution agreements). "[A] 'naked assertion' of antitrust injury, the Supreme Court has made clear, is not enough; an antitrust claimant must put forth factual 'allegations plausibly suggesting (not merely consistent with)' antitrust injury." *Id.* at 451 (quoting *Twombly*, 550 U.S. at 557); *see also OSGI, Inc. v. IBM Global Forensics*, No. 11-80880-CIV, 2012 WL 1150402, at *2 (S.D. Fla. Mar. 14, 2012) ("Absent factual allegations of antitrust injury, an antitrust claim will fail under *Twombly* and *Iqbal*.").

Cobb's allegation that the clearance agreements between AMC's Buckhead theaters and certain film distributors precluded Cobb from licensing certain films are insufficient to plead antitrust injury. Harm to a single competitor, like Cobb, from a vertical exclusivity agreement will not sustain an allegation of antitrust injury in the face of a motion to dismiss—certainly not after *Twombly*. *See NicSand*, 507 F.3d at 455 (dismissing for lack of antitrust injury because "the only harm allegedly suffered by [plaintiff] was in the company's capacity as a competitor in the marketplace, not as a defender of marketplace competition") (quoting *Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 977 (6th

Cir. 2000)).   Thus, the failure of Cobb to allege antitrust injury is yet another ground on which Cobb's antitrust claims should be dismissed.[13]

## V.   Cobb's State Law Claims Should Also Be Dismissed

Cobb's remaining claims essentially recast the antitrust allegations in the form of state law claims.   Thus, Cobb complains that AMC's alleged conduct constituted "tortious interference with Cobb's business relationships with film distributors, landlords, and patrons."  Compl. ¶ 140.  Furthermore, Cobb asserts that "AMC has engaged and continues to engage in exclusive contracts that defeat and lessen competition, encourage monopoly, and restrain trade in markets for film licenses and exhibition," in violation of O.C.G.A.  § 13-8-2 and Georgia Constitution Article III, Section VI, Paragraph V(c).   Compl. ¶ 148.   The deficiencies with Cobb's antitrust claims also defeat the derivative state claims.

To state a tortious interference claim, "a plaintiff must allege facts which, if proven, will show that a defendant '(1) acted improperly and without privilege; (2) purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and (4) for which the plaintiff suffered some financial injury.'"   *HLD Enterps. v.*

---

[13] Because antitrust injury is a component of standing, Cobb's failure to plead antitrust injury deprives this court of jurisdiction.  Thus, AMC alternatively asserts that the case should be dismissed under Fed. R. Civ. P. 12(b)(1).

*Michelin N. Am., Inc.*, No. Civ. A. 1:03 CV 2558T, 2004 WL 2095739, at *3 (N.D. Ga. Aug. 25, 2003) (quoting *St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp.*, 205 Ga. App. 121, 124 (1992)).  As explained above, Cobb fails to plead any facts that would make any requested clearance(s) unlawful; thus, requesting a third party to enter into a lawful contract—or alerting a landlord of a lawful contract—cannot be an "improper" action as a matter of law.  *See, e.g.*, *Neotonus, Inc. v. Am. Med. Ass'n*, 554 F. Supp. 2d 1368, 1380 (N.D. Ga. 2007) (failure to plead antitrust claim required dismissal of tortious interference claim because plaintiff "has failed to show wrongful conduct or causation").  In addition, a tortious interference claim under Georgia law requires an allegation 'that the defendant engaged in some form of direct inducement to a third party. . . ." *Id.* at *4.  Cobb does not identify a single patron, landlord or distributor that was allegedly induced not to do business with Cobb.

Finally, the allegation that AMC violated Georgia constitutional and statutory provisions prohibiting contracts in restraint of trade is insufficient for the same reasons as the federal antitrust claims.  *See Griffin v. Vandergriff*, 205 Ga. 288, 293 (1949) (noting that the constitutional provision has been interpreted "to mean precisely the same thing" as the statutory provision).  Like claims under section 1 of the Sherman Act, Georgia courts have clarified that "a contract may be

upheld if the restraint is reasonable and the contract is valid in other respects."
*Wedgewood Carpet Mills, Inc. v. Color-Set, Inc.*, 149 Ga. App. 417, 421 (1979);
*see also Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1447 (11th Cir.
1991) ("The broad language of this constitutional provision has been narrowed by
the application of a court created 'rule of reason.'").  As explained above, Cobb
has failed to adequately plead that the alleged agreements here are unreasonable.
Moreover, both the Georgia statute and the Georgia constitutional provision are
directed at "contracts" in restraint of trade.  Yet, the Complaint fails to allege any
actual conspiracy or agreement between AMC and any other party.  Finally, a third
party's sole remedy to challenge a contract in restraint of trade under Georgia law
is through a tortious interference claim, which Cobb has failed to adequately plead.
*See Anchor Mfg.*, 7 F.3d at 1003 (expressing "some doubt" that separate causes of
action exist).

## CONCLUSION

For all the reasons described herein, Defendants AMC Entertainment
Holdings, Inc., AMC Entertainment Inc., and American Multi-Cinema, Inc.
respectfully request that plaintiffs' Complaint be dismissed with prejudice.
Defendants request all other relief to which they are justly entitled.

Dated:       April 1, 2014       Respectfully submitted,

s/ Jonathan D. Parente

Mary C. Gill
Georgia Bar No. 294776
mary.gill@alston.com
Adam J. Biegel
Georgia Bar No. 056898
adam.biegel@alston.com
Jonathan D. Parente
Georgia Bar No. 425727
jonathan.parente@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA  30309-3424
Telephone:    (404) 881-7000
Facsimile:    (404) 881-7777

Michael A. Swartzendruber
Texas Bar No. 19557702
michael.swartzendruber@nortonrosefulbright.com
Jason K. Fagelman
Texas Bar No. 00796525
jason.fagelman@nortonrosefulbright.com
Rachel L. Williams
Texas Bar No. 24067175
rachel.williams@nortonrosefulbright.com
Nicholas Taunton
Texas Bar No. 24079439
nicholas.taunton@nortonrosefulbright.com
(*Admitted pro hac vice*)
FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue, Suite 2800
Dallas, TX  75201-2784
Telephone:    (214) 855-8000
Facsimile:    (214) 855-8200

- 26 -

Darryl Anderson
Texas Bar No. 24008694
darryl.anderson@nortonrosefulbright.com
*(Pro hac vice application to follow)*
    FULBRIGHT & JAWORSKI LLP
    1301 McKinney Street, Suite 5100
    Houston, TX 77010
    Telephone:    (713) 651-5562
    Facsimile:    (713) 651-5246

**COUNSEL FOR DEFENDANTS AMC ENTERTAINMENT HOLDINGS, INC.; AMC ENTERTAINMENT INC.; AMERICAN MULTI-CINEMA, INC.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| COBB THEATRES III, LLC; COBB THEATRES IV, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. 1:14-CV-00182-SCJ |
| AMC ENTERTAINMENT HOLDINGS, INC.; AMC ENTERTAINMENT INC.; AMERICAN MULTI-CINEMA, INC., | § § § § § | |
| Defendants. | § § | |

**<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D</u>**

I certify that this memorandum was prepared with 14 point Times New Roman font, in compliance with Local Rule 5.1.

Dated this 1st day of April, 2014.

s/ Jonathan D. Parente

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| COBB THEATRES III, LLC; COBB THEATRES IV, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:14-CV-00182-SCJ |
| AMC ENTERTAINMENT HOLDINGS, INC.; AMC ENTERTAINMENT INC.; AMERICAN MULTI-CINEMA, INC., | § § § § | |
| Defendants. | § § | |

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated this 1st day of April, 2014.

s/ Jonathan D. Parente