IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COBB THEATRES III, LLC; COBB THEATRES IV, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AMC ENTERTAINMENT HOLDINGS, INC.; AMC ENTERTAINMENT INC.; AMERICAN MULTI-CINEMA, INC.,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>1:14-CV-00182-ELR |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Henry D. Fellows, Jr.
Amy Durrence
FELLOWS LABRIOLA LLP
225 Peachtree Street, N.E., Suite 2300
Atlanta, GA 30303
Telephone:  404-586-9200
Facsimile:  404-586-9201
E-mail:  hfellows@fellab.com
         adurrence@fellab.com

Thomas L. Boeder
Eric J. Weiss
Catherine S. Simonsen
(*Admitted pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  206-359-8000
Facsimile:  206-359-9000
E-mail:  tboeder@perkinscoie.com
         csimonsen@perkinscoie.com
         eweiss@perkinscoie.com

128250410.1

# TABLE OF CONTENTS

A.  Cobb's Request Is Not a "New Demand"; AMC Already Agreed
    To Produce the Responsive Documents, Then Backtracked. ............................2

B.  The Case Law Militates in Favor of Granting Cobb's Motion. ..........................4

C.  AMC Fails To Show Undue Burden. ................................................................14

AMC's Response ignores virtually all of the case law cited in Cobb's Motion.  Unable to distinguish this authority, AMC resorts to hurling unfounded accusations at Cobb of "misconstruing" law and facts, "disregarding" authority, and "misleading" the Court, when it is in fact AMC—not Cobb—that is guilty of these tactics.  AMC can use the words "massive" and "irrelevant" as many times as it likes; it does not change the fact that discovery related to AMC's clearance demands over other exhibitors is both central to this case and narrow in scope.

Cobb's request for this discovery is not new.  As detailed herein, it is AMC that has changed its position—initially agreeing to produce the requested documents, only to rescind that position once it provided a written response to Cobb's Interrogatory No. 14.  Moreover, the case law uniformly supports the appropriateness of the discovery Cobb seeks—from the 1950s movie industry cases on which AMC exclusively relies to the modern antitrust precedents of today.  These cases recognize precisely what Cobb argued in its Motion:  AMC's clearance practices outside of Atlanta are discoverable because (1) they bear on the reasonableness of AMC's asserted and threatened clearances against Cobb and (2) they evidence AMC's national scheme to use its circuit power to enforce clearances against smaller, more innovative rivals.  Moreover, AMC can hardly argue that the discovery Cobb seeks is irrelevant; it has requested *the very same*

128250410.1

documents from Cobb.  Finally, AMC's own submissions make clear that it will *not* be incurring the very costs it laboriously estimates, thus leaving AMC in the position of having put forth *no proof* of undue burden.  Indeed, Cobb's request is not "massive," AMC's rhetoric notwithstanding.  Cobb seeks documents related to 19 specific locations, and it has explicitly carved out of its request "day-to-day film licensing communications," which AMC has consistently objected to producing.

For these reasons, detailed further below, Cobb's Motion should be granted.

### A.  Cobb's Request Is Not a "New Demand"; AMC Already Agreed To Produce the Responsive Documents, Then Backtracked.

From the start, Cobb has requested documents relating to AMC's clearance threats and demands vis-à-vis other exhibitors.  *See* Mem. ISO Motion, Doc. No. 65-1, at 4–5.  As numerous courts have recognized, such discovery "directed toward ***acts of the defendant*** which might be restraints but which acts were ***directed against competitors*** of the defendant ***other than the plaintiff seek[s] information relevant to the case***."  Natcontainer Corp. v. Continental Can Co., 362 F. Supp. 1094, 1102 (S.D.N.Y. 1973).  Moreover, this discovery is "needed to uncover evidence of [AMC's] invidious design, pattern or intent" and to test AMC's claims that its blanket clearances are reasonable.  Am. Health Sys., Inc. v. Liberty Health Sys., 1991 WL 30726, at *2 (E.D. Pa. Mar. 5, 1991); *see* Mem. ISO Motion, at 9–18.  Thus, Cobb's revised offer—that AMC produce *only* documents

related to the 19 locations it has admitted to requesting blanket clearance over, with day-to-day film licensing communications explicitly excluded from the request—was not, as AMC characterizes it, a "more aggressive" or "new demand" (Resp., Doc. No. 69, at 12), but rather a significant compromise.

It is in fact *AMC*'s position that has become increasingly obstructionist. Originally, in response to Cobb's Interrogatory No. 14, AMC refused to provide a written response but stated that it "will produce business records containing information sought by this interrogatory." (Ex. 7 at Rog. 14.[1]) Thus, far from "refus[ing] to answer" (Resp. at 12), AMC initially *implicitly conceded* the appropriateness of the request. But after AMC finally agreed to provide a written response, it *reversed* its position on producing documents. It is AMC's unreasonable positions that have necessitated Cobb's Motion.[2]

---

[1] Unless otherwise noted, all citations to "Ex." are to the exhibits to the Simonsen Declaration filed with Cobb's Motion to Compel.

[2] AMC discusses a number of extraneous and irrelevant background facts in its Response, misrepresenting the reasonableness of Cobb's discovery positions along the way. For example, it is true that Cobb's Brookhaven CinéBistro only opened in 2011 (Resp. at 5–6), but AMC competed with Cobb for the lease in 2008, and AMC overhauled its national clearance policies after a 2009 management restructuring. (Compl., Doc. No. 1, ¶¶ 54–57.) Documents pre-dating that policy change by merely a year are plainly discoverable to show the intent behind and justifications for the new policy, which resulted in the blanket clearances at issue in this case. Despite the obvious relevance of documents dating back to 2008, it took *months*—and a threatened motion to compel—for Cobb to get AMC to finally agree to this entirely reasonable temporal scope of discovery.

128250410.1

## B. The Case Law Militates in Favor of Granting Cobb's Motion.

AMC ignores the authority Cobb cited in its Motion, relying instead on a handful of cases from over 50 years ago that either are distinguishable or do not stand for the propositions for which AMC claims they stand.

Most glaring is AMC's misreading of <u>Konczakowski v. Paramount Pictures, Inc.</u>, 20 F.R.D. 588 (S.D.N.Y. 1957). Plaintiffs in that case—operators of a second-run theater in Buffalo—complained of defendants' competing second-run theater's clearances. The court denied plaintiffs discovery regarding *first-run* theaters because plaintiffs "have not shown how information concerning *first run* theatres in Buffalo is relevant." <u>Id.</u> at 592 (emphasis added). Thus, the <u>Konczakowski</u> court's denial of discovery "concerning theaters in Buffalo" was not, as AMC represents, a "refus[al] to allow broad, nationwide discovery" (Resp. at 14–15). It had absolutely nothing to do with a dispute as to geographic scope.

Nor did the <u>Konczakowski</u> court, as AMC falsely represents, "limit[] nationwide discovery beyond the theaters at issue to those 'interrogatories concerning the size of the defendants, the amount of their business and the degree of integration between them'" (Resp. at 15 (quoting <u>Konczakowski</u>, 20 F.R.D. at

---

Similarly, AMC's agreement to expand its custodian list (Resp. at 6) was the result of AMC's *finally* giving Cobb its organization chart, which plainly showed that AMC had omitted appropriate custodians from its initial list.

- 4 -

592)).  Rather, the court first expressly acknowledged:

> Where a . . . theatre owner . . . alleges that certain conduct in a designated area was part of a national conspiracy, . . . [discovery] ***need not be restricted to purely local matters***.

Id. at 592 (emphasis added) (citing Burroughs v. Warner Bros. Pictures, Inc., 12 F.R.D. 491 (D. Mass. 1952)).

The court listed "interrogatories concerning the size of the defendants, the amount of their business and the degree of integration between them" as *examples* of proper nationwide discovery.  Id.  This list was not exhaustive; indeed, the very case Konczakowski cited for this proposition acknowledged that the plaintiff was entitled to discovery that would allow it to present "the picture of a ***nationwi[d]e*** and long-continuing *course of conduct*" by defendants, including "the nature of [defendants'] operations" across the country.  Burroughs, 12 F.R.D. at 493 (emphasis added).³  Far from *limiting* the kinds of nationwide discovery a plaintiff may be entitled to, Konczakowski and the cases it cites expressly *sanction*

---

³ Moreover, Burroughs in turn cited Hillside Amusement Co. v. Warner Bros. Pictures, 7 F.R.D. 260 (S.D.N.Y. 1944), a case in which the plaintiff exhibitor alleged that, "in order to carry out" their "nationwide conspiracy," defendants had engaged in conduct to gain "preference in run, clearance, [and] rentals" in locations across the country, including Hillside, New Jersey, where the plaintiff operated a theater.  Id. at 261–62.  Defendants objected to discovery relating to "events which occurred at places ***remote geographically*** from [Hillside]."  Id. at 261 (emphasis added).  The court overruled the objection, holding, "[s]ince plaintiff alleges a nationwide conspiracy, he ***may be permitted*** to inquire into ***events*** on a ***nationwide scale***."  Id. at 262 (emphasis added).

discovery on a "nationwide scale." Hillside, 7 F.R.D. at 262.

AMC also falsely asserts that Prudential N.Y. Theatres Co. v. Radio City Music Hall Corp., 271 F. Supp. 762 (S.D.N.Y. 1967), "follows Konczakowski's distinction between proper subjects of national inquiry such as the 'size' of defendants and 'amount of their business,' on the one hand, and improper subjects such as 'national or local activities' with other theaters" (Resp. at 18). Prudential cites Konczakowski *only* for the proposition that "[c]ourts have been hesitant to restrict plaintiff's inquiries to a limited geographical area." Id. at 763. *Nowhere* does Prudential say that discovery outside the relevant market is limited to the defendant's size or amount of business.

AMC's counterfactual interpretation of Prudential does not stop there. From the court's recitation of the defendant's position that "plaintiff has no right to secure information about theatres located outside the immediate geographical area which includes [the plaintiff's and defendant's theaters]," AMC infers that the only objection by the defendant at issue in that case (which the court overruled) was to producing discovery "related to theaters nearby but [just] outside of" the relevant zone (Resp. at 19)—not theaters throughout the metropolitan area or other cities. Prudential does not say that. Instead, it cites to several cases—including Konczakowski—that clearly establish that discovery "need *not* be restricted to

- 6 -

purely local matters." Konczakowski, 20 F.R.D. at 592 (emphasis added).[4]

That AMC has agreed to produce documents related to a few Atlanta theaters (Resp. at 19) is thus non-responsive. In fact, AMC's agreement to produce documents related to its and Regal's Alpharetta theaters only highlights the relevance of the documents Cobb seeks. These theaters are in closer proximity by driving time during typical periods of traffic congestion than Cobb's Brookhaven CinéBistro and AMC's Buckhead theaters are. Yet AMC's Alpharetta theaters play day and date with Regal's. AMC has properly agreed to produce discovery regarding these theaters because it will allow Cobb to test AMC's claim that its blanket clearance against Cobb's Brookhaven CinéBistro is reasonable. Cobb expects the documents will show that AMC's clearance has nothing to do with the fact that "the CinéBistro is in close proximity to AMC's [Buckhead] theaters" and is "in substantial competition for patrons" with them (Ex. 1 at Rog. 7), because the same is true of AMC's and Regal's Alpharetta theaters, which play day and date. AMC's clearance over Cobb instead is motivated by a broader

---

[4]    Indeed, Parion Theatre Corp. v. RKO Theatres Inc., 319 F. Supp. 378 (S.D.N.Y. 1970)—a case cited by Cobb which AMC failed to address in its Response—makes clear that Prudential did not just resolve a narrow fight about the discoverability of documents relating to "theaters nearby but [just] outside of" the relevant zone (Resp. at 19). Parion cited Prudential in ordering discovery related to theaters "in the [*entire*] New York City area," even though the parties' theaters were confined to Queens. Id. at 379.

scheme to squash smaller rivals who threaten to disrupt the industry—and AMC's power in that industry. This scheme is made plain by AMC's pattern of crushing smaller, "predatory competitors" throughout the country with clearance threats and demands. See Mem. ISO Motion at 2–4 & Ex. 1 at Rog. 14; id. Ex. 2. The documents Cobb seeks by this Motion are directly relevant to these allegations.

AMC also misconstrues Austin Theatre, Inc. v. Warner Bros. Pictures, 30 F.R.D. 156 (S.D.N.Y. 1958), claiming the court in that case "limited the scope of discovery to four theaters within close vicinity of plaintiff's theater in Queens, New York" (Resp. at 15). AMC fails to quote the next line, where the court allowed, "[i]n addition[,] appropriate inquiries dealing with *[defendants']  practices general* throughout Queens County or the *New York metropolitan area*[.]" Id. at 158 (emphasis added). The court expressly acknowledged that "many factors which bear on whether a clearance is unreasonable may be affected by what is done [by the defendant] vis-à-vis other theatres"—precisely the kind of discovery Cobb is seeking here. Id. at 157.[5]

---

[5] After granting the discovery summarized *supra*, the court went on to say: "The information requested with respect to the large number of other individual theatres named in the interrogatories, if it is relevant at all, seems to me to be so collateral as to be quite beyond the bounds of reasonable inquiry." Id. at 158 (quoted at Resp. at 15). It is not clear from the court's opinion what information was requested with respect to these other theaters, whose theaters they were, or whether they were engaging in or subject to clearance practices that would bear on

AMC's reliance on T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., 16 F.R.D. 173 (S.D.N.Y. 1954) is also misplaced.  As an initial matter, T. C. Theatre—all four paragraphs of it—is not "seminal" (Resp. at 13), nor does it have "progeny" (*id.* at 2) beyond *nine* cases that have cited it since *1954*.  Two of them have distinguished T. C. Theatre for the same reasons it is distinguishable here: Like Konczakowski, it "involv[ed] a conspiracy to deprive plaintiff's theatre of *second run* films," which necessarily rendered the alleged conspiracy "purely local" in nature, William Goldman Theatres, Inc. v. Metro-Goldwyn-Mayer, Inc., 54 F.R.D. 201, 202 (E.D. Pa. 1971) (emphasis added) (contrasting T. C. Theatre with Burroughs), and therefore, "unlike the case at bar," did not "involve[] the reasonableness of clearances nor the question of whether the theatres were in substantial competition.  Indeed, *if [it] had it seems probable that the court would have permitted the discovery sought*," Broadway & Ninety-Sixth St. Realty Co. v. Loew's Inc., 21 F.R.D. 347, 356 (S.D.N.Y. 1958) (emphasis added).[6]

In contrast to T. C. Theatre, in cases like this one, in which the defendant's "activities" harmed the plaintiff's *first-run* theater and are alleged "not . . . as

---

the reasonableness of the clearances exerted by the defendants against the plaintiff in Queens.  As such, Austin is, at best for AMC, silent on whether discovery beyond the "close vicinity" of the theaters directly at issue (Resp. at 15) is proper.

[6]   The "clearly irrelevant" language in Konczakowski quoted by AMC (Resp. at 3) refers to "nationwide" discovery *in* T. C. Theatre, not Konczakowski.

128250410.1

isolated incidents" but rather as "an integral part of a conspiracy to monopolize the industry which is nationwide in scope," courts consistently *reject* the argument AMC makes here.  Burroughs, 12 F.R.D. at 493 (granting nationwide discovery because it "ha[d] a bearing on [defendants'] power or their intent to dominate or monopolize the industry").[7]

For example, in Broadway—a case that expressly distinguished T. C. Theatre as dealing with the "single limited issue" of "denial of second runs"—the *defendants* moved to compel discovery on "the subject of clearances between the [*plaintiffs'*] theatres in the metropolitan area and independent theatres[.]" 21 F.R.D. at 356, 354.  Like AMC, plaintiffs objected that "clearances between [plaintiffs'] theatres and the independents are in no way relevant to such issues." Id. at 355.  The court "c[ould] not agree," explaining that "[p]laintiffs' own practices in parallel situations surely may have a bearing, in some measure, on their claims that defendants' conduct was unreasonable." Id. at 355–56. Analogously, here, *AMC's* practices in parallel situations—i.e., other locations where it has threatened or demanded clearance over a nearby competitor—

---

[7]  See also, e.g., Hopkinson Theatre v. RKO Radio Pictures, 18 F.R.D. 379, 381–82 (S.D.N.Y. 1956) (granting discovery with "no[] geographical[] limit[]" on "the licensing of pictures to theaters operated or previously operated by [defendants]" because such discovery "bear[s] upon the issue of conspiracy, which is necessarily a broad thoroughfare in cases of this kind"); Banana Serv. Co. v. United Fruit Co., 15 F.R.D. 106, 109 (D. Mass. 1953).

unquestionably have "bearing" on the reasonableness of its Buckhead theaters' clearances. Id.; cf., e.g., S. Side Drive-In Co. v. Warner Bros. Pictures Distrib. Corp., 30 F.R.D. 32, 34–36 (E.D. Pa. 1962).

Finally, AMC is correct that Schmidt v. Columbia Pictures Indus., Inc., 1986 WL 13357 (D. Nev. Apr. 14, 1986), and Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc., 131 Cal. Rptr. 3d 519 (Cal. Ct. App. 2011), require AMC to produce documents related to any AMC theater anywhere if they "also relate[] to [Cobb's] theater in [Brookhaven]" (Resp. at 16). That is because such documents are relevant to Cobb's circuit dealing claims. Schmidt, 1986 WL 13357, at *3. But that does not mean that the additional documents Cobb seeks here—those relating to AMC's clearance practices vis-à-vis other exhibitors—are undiscoverable. To the contrary, the cases discussed *supra* establish that they are.[8]

In addition, Cobb cited numerous cases in its Motion that AMC has simply failed to address. These cases only further call into question AMC's cramped and narrow reading of the scarce and remarkably old case law it cites. See Am. Health, 1991 WL 30726, at *2 ("In cases where allegations of conspiracy or monopolization are involved, broad discovery may be needed to uncover evidence

---

[8] Cobb respectfully requests that the Court disregard AMC's wholly irrelevant discussion in its Response and accompanying Exhibit G of a spoliation dispute between different parties in a different case that happen to be represented by some of the same law firms that represent the parties here.

of invidious design, pattern or intent.  ***Where there is doubt over relevance, the rule indicates that the court should be permissive***.") (emphasis added; internal citations omitted); see, e.g., In re Plastics Additives Antitrust Litig., 2004 WL 2743591, at *14 (E.D. Pa. Nov. 29, 2004) (ordering defendants to produce "documents produced to foreign investigative bodies . . . [r]egardless of whether plaintiffs have alleged a global conspiracy" because "these documents may lead to evidence that illuminates defendants' motive and opportunity for the alleged conspiracy within the United States").

AMC implies that the geographic scope of discovery ordered in the cases cited by Cobb was proper only because it was coextensive with the broad geographic markets alleged (see Resp. at 20 n.9).  But the cases Cobb cited make crystal clear that "regardless of how [the] geographic market is eventually defined . . . , ***the boundaries of that market do not set the geographic limits of discovery***" because "the scheme of monopolization may involve an area larger than the plaintiff's own limited sphere of operations."  Kellam Energy, Inc. v. Duncan, 616 F. Supp. 215, 219 (D. Del. 1985).[9]

---

[9] See also SmithKline Beecham Corp. v. Apotex Corp., 2006 WL 279073, at *3 (E.D. Pa. Jan. 31, 2006); United States v. Dentsply Int'l, Inc., 2000 WL 654286, at *5 (D. Del. May 10, 2000); Plastics, 2004 WL 2743591, at *13; Natcontainer, 362 F. Supp. at 1102; In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009).  Nor does AMC explain why the fact that some of the cases cited by Cobb

To be sure, Cobb is not entitled to a "nationwide roving commission" (Resp. at 14, 16, 18). But that is not what Cobb has asked for. Cobb has asked for documents relating to 19 specific locations over which AMC has already conceded demanding blanket clearances. And it has specifically excluded from its request the "day-to-day film licensing communications" that AMC has consistently objected to producing. These are discrete, targeted requests—they fall far short of the nationwide discovery that courts have nevertheless granted in other cases.

Cobb's request is even more appropriate in light of the fact that *AMC* has requested, and Cobb has agreed to produce, the *very kinds of documents* AMC has refused to produce here. Specifically, AMC's RFP No. 14 requests:

> All Documents and Communications evidencing, reflecting, or relating to whether Cobb should, could, or has request(ed) clearances with respect to another theater or Exhibitor [***anywhere***] or should, could, or has refuse(d) to play day and date with another theater or Exhibitor [***anywhere***] on any film(s).

Ex. A hereto. There is absolutely no basis for AMC to insist that Cobb produce "all documents" regarding any requests by *Cobb* for clearances over ***any other theater anywhere***, while simultaneously refusing to produce documents regarding *AMC's* clearances over ***a discrete set of 19 locations***. AMC's RFP No. 14 is a *de facto* concession that the documents Cobb seeks are relevant.

---

were class actions (Resp. at 20 n.9) (and most of them were not) is a relevant distinction.

128250410.1

### C. AMC Fails To Show Undue Burden.

AMC's Response is littered with generalized and unsubstantiated references to the claimed "massive universe of documents" Cobb is supposedly seeking and the "massive burden" the requested production would entail (Resp. at 2, 20). But the affidavit AMC was required to submit to support these conclusory allegations does not establish them.[10] The Sessler declaration estimates that Cobb's proposed search terms would generate "444,000 total 'hits'—or documents to be promoted for review by attorneys," which would allegedly cost $790,000 (Sessler Decl. ¶ 5; see Resp. at 11). But in a footnote, AMC admits that *it will not be incurring these costs* because it plans to use predictive coding to "reduce[]" the "total document universe that AMC will ultimately prioritize for review" (Sessler Decl. at 4 n.1). AMC has thus put forward *no evidence* as to the *actual* costs it anticipates incurring.[11] This failing is both telling and fatal. See Plastics, 2004 WL 2743591, at *14; In re Vitamins Antitrust Litig., 2001 WL 1049433, at *13 (D.D.C. June 20,

---

[10] See Urethane, 261 F.R.D. at 575 ("A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

[11] In any event, AMC's $790,000 estimate is based solely on Cobb's proposed *search terms* (*see* Resp. at 10–11; Sessler Decl. ¶ 5). Cobb is willing to work with AMC to adjust any search terms to avoid "false hits" (Resp. at 10). In other words, the Court can fully address AMC's burden concerns by ordering a slightly modified version of the relief Cobb initially requested—namely, that AMC *test* Cobb's proposed terms (as opposed to ordering AMC to use them).

- 14 -

2001).[12]

Finally, what AMC proposes—that it produce only documents related to its "general" or "overarching" clearance policies and practices, but not those related to specific locations other than Cobb's—requires *more* work and expense than what Cobb is proposing.  AMC apparently plans to run the indisputably appropriate search term <clearance!> on its documents and then review each and every hit to determine whether the document can be withheld on the dubious ground that it relates to a sufficiently "specific" clearance policy or practice that it need not be produced.  Cobb is simply asking this Court to order AMC not to engage in this exercise—which will both *save* AMC money and prevent "the problems posed by giving a party the type of discretion [AMC] propose[s] here."  Vitamins, 2001 WL 1049433, at *13; *see* Mem. ISO Motion at 16–17 (*contra* Resp. at 9 n.7).

For the foregoing reasons, Cobb respectfully requests that the Court grant Cobb's Motion to Compel.

---

[12]   Because AMC has not shown undue burden, and because the documents Cobb has requested are unquestionably relevant, cost-shifting (see Resp. at 5 n.4) is entirely inappropriate, and AMC cites *no* case law for the proposition that it is.  If this Court grants Cobb's motion, Cobb respectfully requests that it do so with prejudice to AMC's filing a motion for cost-shifting.  AMC had every opportunity to make argument and cite authority for such a novel proposal in its Response, and failed to do so.  A second round of briefing on cost-shifting would drag out what has already been a regrettably protracted period of discovery negotiations.

Dated:  October 19, 2015               **Fellows LaBriola LLP**

                                       /s/ Henry D. Fellows, Jr.
                                       Henry D. Fellows, Jr.
                                       Georgia Bar No. 257825
                                       Amy Durrence
                                       Georgia Bar No. 170398
                                       225 Peachtree Street, N.E., Suite 2300
                                       Atlanta, GA 30303
                                       Telephone:  404-586-9200
                                       Facsimile:  404-586-9201
                                       E-mail:  hfellows@fellab.com
                                       E-mail:  adurrence@fellab.com

                                       *-and-*

                                       **Perkins Coie**

                                       Thomas L. Boeder (*Pro Hac Vice*)
                                       tboeder@perkinscoie.com
                                       Eric J. Weiss (*Pro Hac Vice*)
                                       eweiss@perkinscoie.com
                                       Catherine S. Simonsen (*Pro Hac Vice*)
                                       csimonsen@perkinscoie.com
                                       1201 Third Avenue, Suite 4900
                                       Seattle, WA 98101-3099
                                       Telephone:  206-359-8000
                                       Facsimile:  206-359-9000

                                       *Attorneys for Plaintiffs*

- 16 -

128250410.1

## **LOCAL RULE 7.1D CERTIFICATION**

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

/s/ Henry D. Fellows, Jr.
Henry D. Fellows, Jr.
Georgia Bar No. 257825
**FELLOWS LABRIOLA LLP**

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ Henry D. Fellows, Jr.
Henry D. Fellows, Jr.
Georgia Bar No. 257825
**FELLOWS LABRIOLA LLP**

128250410.1